**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ORLANDO EDNEY, Plaintiff :

V. : CIVIL NO. 26 - cv – 588

RUBIN, et. al. Defendants :

---

**PLAINTIFF'S CERTIFICATION OF COMPLIANCE REGARDING LEGAL CITATIONS**

I, Orlando Edney, Plaintiff pro-se in the above captioned matter, hereby certify and declare under penalty of perjury, pursuant to 28 U.S.C. sec. 1746, that the following statements are true and correct;

1. In compliance with the Court's Order issued by the Honorable judge Kai N. Scott, I have personally reviewed, verified, and cross – referenced each and every citation of legal authority contained within my filings.
2. I certify that no generative artificial intelligence ( AI ) tools were utilized to invent, draft, or manufacture any legal citations or arguments in my documents. All factual and legal references are completely human – verified, valid, and authentic.

3. **In strict compliance with the Court's directive, I certify that I have manually verified the authenticity and formatting of the following Supreme Court precedents cited in my brief;**

a. Ashcroft v. Iqbal, 556 U.S. 622 ( 2009 ).

b. Bell Atl. Corp. v. Twombly, 550 U.S. 544 ( 2007 ).

c. City of Canton, v. Harris, 489 U.S. 378 ( 1989 ).

d. Erickson v. Pardus, 551 U.S. 89 ( 2007 ).

e. Graham v. Connor, 490 U.S. 386 ( 1989 ).

f. Heck v. Humphrey, 512 U.S. 477 ( 1994 ).

g. Kentucky v. Graham, 473 U.S. 159 ( 1985 ).

h. Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit, 507 U.S. 163 ( 1993 ).

i. Mapp v. Ohio, 367 U.S. 643 ( 1961 ).

j. Scott v. Harris, 550 U.S. 372 ( 2007 ).

k. Terry v. Ohio, 392 U.S. 1 ( 1968 ).

l. Wolf v. Colorado, 338 U.S. 25 ( 1949 ).

m. Florida v. J.L, 529 U.S. 266 ( 2000 ).

**4. I further certify that I have manually verified the authenticity and formatting of the following Federal Appellate and State Supreme Court precedents cited in my brief;**

a. Baird v. Renbarger, 576 F.3d 340 ( 7th Cir. 2009 ).

b. A.M. ex. rel. J.M.K, v. Luzerne County. Juvenile Det. Ctr, 372 F.3d 572 ( 3d Cir. 2004 ).

c. Beck v. City of Pittsburgh, 89 F.3d 966 ( 3d Cir. 2004 ).

d. Commonwealth v. Hicks, 652 Pa. 353, 208 A.3d 916 ( 2019 ).

e. Commonwealth v. Hawkins, 547 Pa. 652, 692 A.2d 1068 ( 1997 ).

f. Forrest v. Perry, 930 F.3d 93 ( 3d. Cir. 2019 ).

g. Kopec v. Coughlin, 922 F.2d 152 ( 2d Cir. 1991 ).

h. Rode v. Dellarciprete, 845 F.2d 1195 ( 3d. Cir. 1988 ).

i. Vogt v. Wetzel, 8 F.4th 182 ( 3d Cir. 2021 ).

5. **I further certify that I have manually verified the following statutory authorities and procedural rules cited in my documentation to ensure complete compliance with federal pleading standards;**

   a. Title 42 U.S.C. Sec 1983 ).

   b. Federal Rule of Civil Procedure 8 (a).

   c. Federal Rule of Civil Procedure 11.

   d. Federal Rule of Civil Procedure 12 (b) (6).

6. **All factual analysis presented in my filings remains strictly tied to the verified record of this matter and the relevant factual police study.**

**Respectfully Submitted**

Date; 9 -- 19, 2026

[signature]

Orlando Edney Pro - Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ORLANDO EDNEY,** | : | **Civil Action No. 26-CV-588** |
| **Plaintiff - Pro-Se.** | : | |
| **V.** | : | |
| **JOSHUA RUBIN, et. Al.** | : | |
| **Defendants.** | : | |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**Plaintiff's First Amended Complaint Meets the Plausibility Standards of " *Bell Atl. Corp. v. Twombly"* and *"Ashcroft v. Iqbal"* Suffers No "*Heck v. Humphrey* 512 U.S. 477 (1994) Procedural Bar.**

**Defendants** rely heavily on '*Ashcroft* v. *Iqbal"* and "*Bell. Atl. Corp.* v. *Twombly"* to claim that **Plaintiff's First Amended complaint,** contains nothing more than "threadbare recitals" **(Defs. Mot. At 2-3**). This characterization completely ignores the explicit, descriptive physical facts detailed in Plaintiff's pleading.

I.

**To** satisfy the federal pleading standard a complaint must present enough factual matter to allow the Court to draw a "reasonable inference that the defendant is liable

for the misconduct alleged." *See Iqbal*, 556 U.S. at 678. As Defendants themselves acknowledge on page 2 of their motion, Plaintiff explicitly pled that on April 1, 2024, at approximately 9:40 p.m., he fully complied with police commands by placing his belongings on the ground and putting both hands in the air in a position of complete surrender. (**Amended Compl. 8-9**). Despite this compliance and total lack of physical resistance, officers Rubin and Vazquez used violent force to slam Plaintiff to the ground. (**Amend. Compl. 14**). Plaintiff's very next memory suffering from severe head and face trauma, a bleeding lip and a large lump on his head. (**Amended Compl. 16, 18-19**).

Crucially, all underlying criminal charges arising from this incident were dismissed in the lower court under Docket No. **CP–51-CR-0002691-2024**. A true and correct copy of the lower court's disposition confirming the dismissal of all charges is attached hereto as " **Exhibit A**". Because the criminal proceedings were terminated entirely, Plaintiff satisfies the threshold requirements for civil rights actions under 42 U.S.C. sec. 1983, and these claims are completely free from any bar under *Heck v. Humphrey*, 512 U.S. 477 (1994)

**II.**

**Slamming an unarmed**, compliant individual into the pavement with enough force to cause severe head trauma and emergency medical treatment easily crosses the line from "conceivable to plausible." These are objective, physical facts – not abstract legal conclusions – and they establish a valid claim for excessive force under the Fourth Amendment constitution.

**Material contradictions and sworn, under–oath discrepancies between the initial Police Statement and the notes of testimony render a Dismissal Motion improper.**

**Defendants'** motion relies entirely on a standardized narrative constructed from the initial Police paperwork to assert that the officer's use of force was objectively reasonable, (**Defs. Mot. at 4-5**).

**However**, Defendants completely gloss over the fact that the initial, unsworn police reporting significantly contradicts the under-oath Notes of Testimony from the lower court criminal proceeding.

**III.**

**These** material contradictions regarding how the encounter initiated, what commands were given, and the true extent of Plaintiff's compliance are the very reasons why the lower court dismissed the criminal case under *Commonwealth v. Hicks*, 652 Pa. 353 (2019) and *Commonwealth v. Hawkins*, 547 Pa. 652 (1997). Relevant, physical excerpt pages from these under-oath criminal transcripts are attached hereto as **Exhibit B.**

**Under long standing Pennsylvania constitutional law**, an unverified anonymous tip regarding a firearm, does not grant law enforcement a blank check to strip a citizen of their rights or skip investigatory boundaries.

**IV.**

**Because** the halting officers own "**Sworn Statements in the Notes of Testimony**"

conflicts with their initial, self – serving police paperwork, there are severe, disputed questions of material fact regarding the integrity of the arrest. At the Rule 12(b) (6) stage, a federal court is legally forbidden from weighing the credibility of witnesses or resolving factual disputes between conflicting police accounts. Instead, the Court must accept the Plaintiff's well-pled facts as true. Because the changing police narratives directly undermine the defenses claims of an "objective, reasonable protective frisk", this motion must be denied so that the full "**Notes of Testimony and body camera footage**" can be scrutinized during discovery.

**V.**

**The Fourteenth Amendment is a Procedural Necessity to Enforce Fourth Amendment Claims against Municipal Actors.**

**Defendants** argue on ( **page 4**, of their motion that Plaintiff's references to the Fourteenth Amendment must be dismissed because all excessive force claims involving free citizens must proceed exclusively under the Fourth Amendment pursuant to "*Graham v. Connor,*" **(Defs. Mot. at 3-4**). Defendants confuse substantive claims with constitutional mechanisms.

**VI.**

**Plaintiff** clarifies that he does not seek a separate, independent "substantive due process" claim under the Fourteenth Amendment, and he agrees that the "objective reasonableness" standard of the Fourth Amendment's text applies directly only to the federal government. It is made applicable to municipal entities (such as

the **City of Philadelphia**) and local law enforcement personnel (such as officers **Rubin and Vazquez**) solely via the Incorporation Doctrine through the "Due Process Clause of the Fourteenth Amendment", "*Mapp v. Ohio*, 367 U S. 643 (1961); "*Wolf v. Colorado*, 338 U S. 25 (1949). Because the Fourteenth Amendment serves as the legal gateway allowing a free citizen to bring a Fourth Amendment claim against local municipal actors under 42 U.S.C. Sec. 1983, mentioning it in the Jurisdiction and Venue sections is procedurally correct.

**VII.**

**Defendants Incorrectly Seek to Impose an Overruled, Heightened Pleading Standard Upon a Pro-Se Civil Rights Litigant**

**Defendants** cite" *Vogt v. Wetzel"* and the outdated case "*Hall v. Pennsylvania State Police*, 570 F.2d 86 (3d Cir. 1978), to demand a "higher degree of specificity" from Plaintiff. (**Defs Mot. at 3**). This attempt to heighten the pleading standard directly conflicts with controlling Supreme. Court precedent.

The United States Court eliminated any "Heightened pleading standard" for civil rights action in *Leatherman v. Tarrant County Narcotics. Intelligence Coordination Unit*, 507 U.S. 163 (1993), holding that federal courts cannot require a higher degree of specificity in Section 1983 cases than what is required by the notice pleading standard of Federal Rule of Civil Procedure 8(a)."

**VIII.**

**Furthermore**, while Defendants demand rigid compliance, they entirely ignore the mandatory leniency this Court must grant to self- represented litigants. The

Supreme Court in "Erickson v. Pardus, 551 U.S. 889, 94 (2007)," firmly reaffirmed that "a Pro-Se complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.

**IX.**

**Plaintiff has given Defendants "fair notice of the exact date, time, location, individuals involved, and severe physical injuries resulting from their conduct."**

**X.**

**Defendants Reliance on *Neuburger v. Thompson* is False and Fails to Justify Brutal Physical Force Against a Compliant Citizen**.

**Defendants cite**; "*Neuburger v. Thompson*, 305 F. Supp. 2d 521 (W.D. Pa. 2004), to argue that the officer's actions were objectively reasonable due to the inherent

danger of nighttime firearm investigations involving alcohol. This comparison completely distorts the facts of both cases.

**In "*Neuburger*,"** law enforcement officers were confronting an extremely volatile suspect who had actively fired a live ammunition round into a public lake before officers intervened. Here, taking the facts in the "**First Amended Complaint as true**, Plaintiff was standing peacefully on a corner holding a cigarette and a beverage container.

**XI.**

**Plaintiff did not point a weapon, did not fire a weapon, and made no**

**verbal or physical threats toward the public or the officers.**

**Furthermore,** Defendant's attempt to use the legality of an initial investigative stop to shield themselves from liability of subsequent use of physical force. While a 911 radio call may give officers the right to conduct a brief, investigatory inquiry under *Terry v. Ohio*, 392 U.S. 1 (1968). It does not grant them a license to violently ground a citizen who has surrendered. Defendants had already " UNHOLSTER their weapons" before exiting the patrol car, **shown in bodycam footage**. *See* ***Exhibit B - Notes of Testimony***. *Baird v. Renbarger* (7th Cir. 2009); Federal courts have held that. Unholstering or pointing a firearm at a person when there is no immediate, credible threat or evidence of active violence constitutes a severe escalation and can violate Fourth Amendment protections against unreasonable seizures and excessive force. *Florida v. J.L.* (529 U.S. 266); The U.S. Supreme Court unanimously ruled that an anonymous tip reporting a person with a gun, which merely described a subject's location and clothing without predictive information or observable illegal conduct, does not justify a stop-and-frisk. The tip must be reliable in its assertion of illegality, not just in its ability to identify a person accurately.

**XII.**

**No Automatic Authority – Police cannot use a bare-bones anonymous call as a shortcut to bypass the requirements for individualized, articulable suspicion.**

**Escalation of Force**; unholstering weapons immediately upon arrival, absent a visible threat or dangerous context verified by the officer's themselves, signals that a

person is not free to leave, transforming the encounter into seizure that lacks legal justification if the underlying tip is unreliable.

The mere presence of a gun magazine inside a pocket uncovered during a search cannot retroactively justify tactical physical force that results in severe head, face trauma.

**XIII.**

**Defendant's Inappropriately Conflate a Protective Search for Weapons with Unprovoked Physical Force**;

**Defendant's cite**; " *Estate of Fortunato v. Handler*, 969 F. Supp. 963 ( W.D. Pa. 1996 ), to argue that courts should not engage in. " Monday morning quarter backing" regarding an officer's choice of restraining methods. ( **Defs. Mot. at 5** ). This argument fundamentally mischaracterizes plaintiff's claim. Plaintiff is not asking this Court to evaluate whether the officers chose the " Least intrusive" tactical option; Plaintiff is alleging that the total application of violent, inducing force against a fully compliant surrendering individual was objectively unreasonable under any standard.

**While** " *United States v. Scott*, 420 F. Supp. 3d 295 ( E.D. Pa. 2019 )," allows a reasonable amount of force to execute a protective search under " Terry", it does not authorize officers to slam an unarmed citizen face first into concrete when both hands are raised in the air.

XIV. **Plaintiff's Claim's Adequately Target Defendant's in their Individual Capacities to Vindicate Personal and Supervisory Civil Rights Violations**;

**Defendant's cite**; " *Kentucky v. Graham*, 473 U.S. 159 ( 1985 )," to argue that claim's against Police Commissioner Bethel, and Officers Rubin and Vazquez in their official capacities duplicate the claim's against the City of Philadelphia and must be dismissed. ( **Def. Mot. At. 5** ).

**To** the extent that any portion of the **First Amended Complaint** is construed as an official capacity claim against the individual officers, Plaintiff clarifies that Officers **Rubin and Vazquez**, alongside Commissioner **Bethel,** are being sued in their Individual and personal Capacities pursuant to " 42 U.S.C. Sec. 1983." An individual capacity suit seeks to impose personal liability upon a government official for actions taken under color of state law. " *Kentucky v. Graham*, 473 U.S. at 165." Officers **Rubin and Vazquez,** are personally liable because they directly executed the unconstitutional detention, physical force. Commissioner **Bethel** is individually liable under " Third Circuit Supervisory Doctrine" because he maintained oversight, failed to properly train or discipline his officers, and demonstrated deliberate indifference to a custom excessive force within the department.

XV.

**Plaintiff Robustly Alleges Municipal Liability Against the City of Philadelphia Under " Monell " via Deliberate Indifference and Systemic Failure to Train; Defendant's cite**; " *Monell v. Dept. of Soc. Serve," and " Gorman v. Township of Manalpan* " to argue that Plaintiff's claim against the City of Philadelphia must be dismissed because it describes an isolated, " one off interaction " rather than a formal municipal policy or custom. ( **Defs. Mot. At 6** ). This argument ignores established Third Circuit municipal liability frameworks.

While a municipality cannot be held liable under a theory of respondent superior, Liability robustly attaches under Sec. 1983, where a city's failure to train, supervise, or

discipline it's police force amounts to " Deliberate Indifference " to the rights of citizens with whom the police come into contact. "*City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Beck v. City of Pittsburgh*, 89 F. 3d 966 (3d Cir. 1996)." **Furthermore,** a municipality's custom can be proven by showing that policymakers knew about a risk of constitutional violations but failed to take precautionary measures, creating an unwritten practice of tolerating excessive force. See; "*Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019). The sheer brutality of this encounter resulting in severe "head and face trauma," strongly supports a plausible inference that the "**City of Philadelphia**" has failed to properly train, evaluate, and restrain it's officers regarding "Fourth Amendment boundaries, Dismissal at this stage is premature, as a pro-se litigant does not have access to internal disciplinary files or internal affairs logs without the benefit of judicial discovery.

**Plaintiff Robustly Alleges Personal Involvement and Supervisory Liability Against Police Commissioner Bethel Under Precedent**;

**Defendant's cite**; " *Rode v. Dellarciprete*, 845 F.2d 1195 ( 3d Cir. 1988 )" to argue that claim's against Police Commissioner Bethel must be dismissed because Plaintiff fails to allege his direct physical participation on the night of the arrest. ( **Defs. Mot. At 7**). Defendant's rely on overly narrow reading of "Sec. 1983 supervisory liability. As the Third Circuit explicitly held in " Rode, a plaintiff satisfies the personal involvement requirement by showing particularized allegations of " personal direction or of actual knowledge and acquiescence." " Rode, 845 F.2d at 1207. *Furthermore*, a supervisor can be held liable under Sec. 1983, if they maintained or tolerated an administrative custom that directly caused a constitutional injury. See; "*Taylor v. Barkes*, 575 U.S. 822 ( 2015 ). " *A.M. ex. rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.* 372 F. 3d 572 (3d Cir. 2004 ). Taking the facts in the "Plaintiff First Amended

Complaint " as true, Commissioner **Bethel** is the chief policymaker responsible for the administration, training, and disciplinary review of the Philadelphia Police Department. **Plaintiff's** claim's assert that Commissioner **Bethel** had actual or constructive knowledge that his subordinates routinely utilized excessive force during nighttime investigation's evidence by the City's own official "Citizens Police Oversight Commission" ( **CPOC** ) metrics yet he acquiesced to this custom by failing to implement adequate corrective training or disciplinary oversight.

XVII.

**Defendant's Footnote Request to Strike Plaintiff's as " AI Generated " Lack Basis and Must Be Denied**;

**Defendant's footnote** suggestion that portions of Plaintiff's pleadings should be stricken as " **AI Generated** " is an ungrounded attempt to prejudice the Court against a self represented litigant. ( **Defs. Mot. At 7 n. 5** ). The Court has already explicitly check this bad faith strategy by flatly denying Defendants Motion to Strike in its August 5th , 2026 Oder **( ECF No. 20, 1** ). As a pro se litigant facing the extensive resources of the City of Philadelphia's law department, Plaintiff utilizes available public references, digital editing, and legal database formatting tools to present his claim's clearly and professionally.

**Pursuant to Federal Rule of Civil Procedure 11**, Plaintiff's physical signature below certifies that the factual contentions have concrete evidentiary support and are not manufactured. Utilizing standard research, editing, or structural layout assistance does not invalidate a pro se pleading, and the defenses request to strike paragraphs " **1 – 22**, must be denied. "**As it is Plaintiff's factual allegations before said Court**."

XVIII.

**Defendant's Are Not Entitled to Qualified Immunity Because They Violently Breached Clearly Established Fourth Amendment protections;**

XIX.

**Defendant's raise the defense to Qualified Immunity for Commissioner Bethel and Officers Rubin and Vazquez.** " Citing; *Pearson v. Callahan*, 555 U.S. 223 ( 2009 ) and *Anderson v. Creighton*, 483 U.S. 635 ( 1987 ). **( Defs. Mot. At 8** ).

**Defendant's assertion of qualified immunity must be rejected because their actions violated clearly established law.**

**To** overcome a defense of qualified immunity, a Plaintiff must satisfy a two pronged test; (1) the facts alleged must show the official's conduct violated a constitutional right, and

(2) the right at issue must have been "clearly established " at the time of the Defendants alleged misconduct. " *Pearson*, 555 U.S. at 232 )."

The right of an arrestee to be free from severe physical violence when they are fully compliant and not resisting has been clearly established by the United States Supreme Court and the Third Circuit for decades. See; "*Graham v. Connor*, 490 U.S. 386 (1989 ); " *Kopec v. Coughlin*, 922 F.2d 152 (3d Cir. 1991). No reasonable office could have believe that inflicting injuries on an unarmed individual standing with his hands in the air was legally permissible.

## CONCLUSION

For all the reasons stated above, Plaintiff Orlando Edney respectfully request that this Honorable Court DENY Defendant's Motion to Dismiss the First Amended Complaint in it's entirety, Deny their request to strike portions of the pleadings and permit this action to proceed immediately to pre – trial discovery.

**Respectfully Submitted**

Date: 9 -- 19, 2026

Orlando Edney pro – se

11133 Templeton Drive

Philadelphia, Pa. 19154

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Orlando Edney, Pro – Se Plaintiff,

V. Civil No. 26 – cv 588

RUBIN, et Al. Defendants

---

**CERTIFICATE OF SERVICE**

I, Orlando Edney, hereby certify that on this, 9 -- 19, 2026. I served a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the First Amended Complaint ( alongside with attached " **Exhibit A, and Exhibit B** ) upon defense counsel via first class United States Mail, postage prepaid, addressed as follow;

**COURTNEY C. OKWARS, Esq.**
Assistant City Solicitor
1515 Arch Street, 14th floor
Philadelphia, Pa. 19102.

**Clerk of Court**
United States District Court House
601 Market Street Room # 2609
Philadelphia, Pa. 19106

Date: 9 -- 19, 2026

[signature]

Orlando Edney, Plaintiff, pro – se.

# Exhibit "A"

## Trial Disposition

## Dismissal

# Trial Disposition and Dismissal Form

| | | |
|---|---|---|
| ____ Currently in County Prison | ____ ARD | Page: 1 of 1 |
| ____ Intake given at time of Plea | ____ Standard | Date: |
| ____ Plea | ____ Revo. (Prob./Parole) | PSI Agent: |
| ____ Plea & Sentencing | ____ ICC | Court Rep. Initials: |
| ____ Trial | ____ Bench Warrant Review Hearing | Case Assigned To: |
| ____ IPP | | Collections Initials: |

File #

Presently on supervision with P.O.

## DISPOSITION / COMMITMENT

Name: Edney, Orlando

Time:

D.A.: Philadelphia County District Attorney's Office

Race: Black Sex: Male

PID: 0716088

Disp.Authority: Schultz, Jennifer

Sentencing Date:

Typing Date:

Defense Counsel: Defender Association of Philadelphia

Court Room: 901

48 Hrs: ______ 30 Days: ______ 90 Days: ______ BAC: ______ CRN Date: ______

| DOCKET<br>OTN<br>DATE of OFFENSE | COUNT - OFFENSE<br>FINE RANGE<br>PLEA | OFFENSE CODE<br>GRADE | DISPOSITION<br>DISPOSITION DATE<br>SENTENCING DATE | FINES<br>COSTS<br>RESTITUTION |
|---|---|---|---|---|
| CP-51-CR-0002691-2024<br>U 300938-1<br>04/01/2024 | 1 - Possession Of Firearm Prohibited | 18§6105§§A1<br>F1 | Nolle Prossed<br>Disposition Date: 09/24/2024<br>Disposing Authority: Schultz, Jennifer | Costs/<br>____ Fines<br>____ EMSA<br>____ MCARE<br>____ Rest |
| CP-51-CR-0002691-2024<br>U 300938-1<br>04/01/2024 | 2 - Firearms Not To Be Carried W/O License | 18§6106§§A1<br>F3 | Nolle Prossed<br>Disposition Date: 09/24/2024<br>Disposing Authority: Schultz, Jennifer | Costs/<br>____ Fines<br>____ EMSA<br>____ MCARE<br>____ Rest |
| CP-51-CR-0002691-2024<br>U 300938-1<br>04/01/2024 | 3 - Carry Firearms Public In Phila | 18§6108<br>M1 | Nolle Prossed<br>Disposition Date: 09/24/2024<br>Disposing Authority: Schultz, Jennifer | Costs/<br>____ Fines<br>____ EMSA<br>____ MCARE<br>____ Rest |
| CP-51-CR-0002691-2024<br>U 300938-1<br>04/01/2024 | 99999 - Posses Firearm W/Manufacturer Number Altered, Etc | 18§6110.2§§A<br>F2 | Disposed at Lower Court<br>Disposition Date: 04/30/2024<br>Disposing Authority: Krasner, Larry | Costs/<br>____ Fines<br>____ EMSA<br>____ MCARE<br>____ Rest |
| U 300938-1 | | | | Costs/<br>____ Fines<br>____ EMSA<br>____ MCARE<br>____ Rest |

**Comments:** Courtroom 901 Honorable Jennifer Schultz ADA: Kelsey Gimaro, Defender Association: Claudia Kim Court Clerk: Malik Everson, Stenographer: Kerry Permsap - This Matter is Nolle Prossed (prosecutorial discretion) Defendant is in custody (PICC).

BY THE COURT:

09/24/2024
Date

[signature]
Judge Jennifer Schultz

Exhibit "B"

"Police Report"

"Notes of testimony"

PHILADELPHIA POLICE DEPARTMENT

# COMPLAINT OR INCIDENT REPORT

| YEAR | DIST/OCC. | D.C. No. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 24 | 12 | 025791 | 3 | 12 | T9 | 4-1-24 |

CRIME OR INCIDENT CLASSIFICATION: HC
CODE: 3017
TIME OUT (A/P): 9:45 P
TIME IN (A/P):

LOCATION OF OCCURRENCE: 6448 Dicks Avenue
☐ IN ☒ OUT
TYPE OF PREM.: 53

DATE OF OCCUR.: 4-1-24
DAY CODE: 1
TIME OF OCCUR. (A/P): 9:44 P
NATURE OF INJURY: R. Cheek + Mouth bleeding

COMPLAINANT: Orlando Edney 5-14-74
AGE:
RACE: B
SEX: M
PHONE (HOME):

[redacted]

PHONE (BUSINESS):

FOUNDED: ☒ Yes ☐ No
REPORT TO FOLLOW: ☐ Yes ☒ No ☐ Close Out
UNIT:
CODE:
INV. CONT NO.:

WITNESS: ☐ Yes ☐ No
TRACEABLE PROP.: ☐ Yes ☐ No
UNIQUE DESCRIPTION OF OFFENDER: ☐ Yes ☐ No
OTHER EVIDENCE: ☐ Yes ☐ No

DESCRIPTION OF INCIDENT *(Include Description of Crime Scene if Applicable)*

HC

Abv. compl. was being detained and resisted when Police took compl. to ground using control holds. Minor cut to right cheek + mouth bleeding. Firearm was recovered DC# 24-12-025790. 1201 transported to HUP-Cedar Dr. Attending

| WITNESS | ADDRESS | PHONE NUMBER |
|---|---|---|
| | | |

OFFENDER INFORMATION

| PROPERTY DESCRIPTION *(Include Make, Model, Color and Serial No. Where Applicable)* | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐ Yes ☐ No | $ |

DC NO.: 791

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|---|---|
| | |

| VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATOR'S NAME |
|---|---|
| | |

| WANTED/STOLEN MESSAGE SENT | DIST./UNIT TERMINAL | RECEIPT NO | SENT BY |
|---|---|---|---|
| General No. Date | | | |

| REPORT PREPARED BY | NO. | DIST./UNIT | TOTAL PAGES | PAGE NO |
|---|---|---|---|---|
| RUBIN / VAZQUEZ | 6097 / 9346 | 12 | 1 | 1 |

| REVIEWED BY | NO. | DIST./UNIT | REFERRAL DATE | CEN NO. |
|---|---|---|---|---|
| | | | | |

PURSUANT TO ACT 165 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM

75-48 Front (Rev. 11/09) [redacted], [redacted]

| INVESTIGATION INTERVIEW RECORD<br>CONTINUATION SHEET | CITY OF PHILADELPHIA<br>POLICE DEPARTMENT | |
|---|---|---|
| NAME: P/O Rubin #6077 | Page 2 of 2 | CASE NO. 24-2900 |

confused as if he had been drinking. I informed the male that we were responding to a Radio Call. I asked the male if I could see his hips. I approached with my flashlight on the left side of the male's bladed body and observed a black extended magazine sticking out of the males left pants pocket. I immediately asked the male if he had a permit to carry a firearm. The male put his head down and said "no". I then quickly grabbed the extended magazine from the male's left pants pocket. As P/O Vazquez and I attempted to detain the male, the male passively resisted. We took the male to the ground using control holds. Then we placed him in handcuffs. As we turned the male on his backside, I recovered a black Polymer 80 from his right-side pocket of his hooded sweatshirt. There was no magazine in the Polymer 80, but there was one live .380 round in the chamber of the gun. There were also three live .380 rounds inside of the extended magazine.

Q. Did you identify this male?
A. Yes. Orlando Edney (b/m 5-14-1974) His listed address is 2611 S 61st.

Q. Did you locate a scene?
A. No. There was no ballistic evidence. There were also no calls for gunshots in the area.

Q. Did you check Edney for a permit to carry a firearm?
A. Yes. With negative results.

Q. Did Edney make any statements to you after you placed him under arrest?
A. No.

Q. Did you locate a witness?
A. Yes, Mamadou Ndiaye(1-12-01) of 6430 Garmen Street. (610) 864-0814. This witness stated to P/O Vazquez waving the firearm in the air. Ndiaye stated that Edney did not point the gun at anyone in particular.

Q. Anything else you like to add to the interview?
A. Yes. Edney is currently at HUP Cedar to be seen for a bloody mouth and a scrape to his right cheek.

**Interview was concluded at: 11:48PM**

This interview is concluded at 11:53 PM on 04-01-24.
P/O Rubin , please review the contents of this interview and if everything is accurate and true to the best of your knowledge, please sign and date each page in the appropriately marked spaces.

P/O Vaz #9326 [redacted]
Signature: P/O Ru #6077 [redacted] Date: 4-1-24

The facts set forth in this statement are true and correct to my personal knowledge or information and belief, and any false statements therein are made subject to the penalties of Section 4904 of the Crimes Code (18 PA C.S.) relating to unsworn falsification to authorities.

| RECORD<br>☐ Yes ☐ No | CHECKED BY |
|---|---|
| REVIEWED BY | |

are we talking about? I thought that there was a TASER? No. And then he put his hand out, and that's when they -- yeah, they didn't handcuff him until he was on the ground.

MS. KIM: He was already being placed in cuffs and he was on his way -- he was hitting the ground. The body worn shows that the partner officer was putting cuffs on Mr. Edney when he was still standing up.

MS. GIMARO: Your Honor, if I may, it's my understanding that in the video you see the officer attempt to put the cuffs on and that's kind of what causes the defendant to fall. So I think one might get secured as he's standing and the other is on the ground. But that is kind of what causes that fall. I think when he's putting his hands behind his back, that is what causes him to lose balance.

THE COURT: Is that before or after do you have a permit?

MS. GIMARO: I think that's after.

THE COURT: Right. The handcuffs were not involved with that at the point of the question.

MS. GIMARO: Right. The permit was --

he's standing in front of him with the flashlight saying, do you have a permit.

THE COURT: No. No. It was the TASER.

MS. GIMARO: Sorry. But that's when after that he recovers the magazine, which he believed is a gun and that's when that first cuff goes off and that's when he falls. But the permit is before he recovers --

THE COURT: Right. So to understand the facts and how would you think about this, he wasn't handcuffed at the time the question was posed.

MS. KIM: So I think that the question, do you have a permit was first asked when they approached Mr. Edney on the corner. So first it was --

THE COURT: No, they just asked him about the gun not the permit.

MS. KIM: Do you have a gun and then they're asking about the permit and then he is getting -- again, it a very quick interaction and then he is getting cuff and then he's on the ground.

The distinction that I am also drawing

and it was near 6448 Dicks Avenue in Philadelphia. In that location it was a high-crime location. There was a Papi Store that was known for having a frequency of narcotics sales including multiple homicides in the several years leading up to this event. There's also a nuisance bar across the street.

The police received a radio call including a description of a person with a hoodie, gray hoodie, dark gray sleeves, black pants, small Afro, waving a gun in his hand and no complainant.

And so Officer Rubin responded with his partner in a marked police car and they were both in full uniform. They arrived approximately three to four minutes later at that scene. And officer Rubin exited the vehicle with his TASER drawn and he saw the defendant standing on the corner. There was no visible weapon. He was smoking and there was a beer can or a soda can at his feet.

The police recognized that he matched the description from the radio call. The defendant was wearing black pants, a gray sweatshirt with black sleeves, had a small

Afro.

So Officer Rubin immediately asked Mr. Edney, do you have a gun, to which Mr. Edney replied, No, I'm drinking my beer. I've just been drinking my beer. His speech was slurred, giving the impression to being intoxicated. And Officer Rubin asked him to show me the beer, because he at first didn't see it and then motioned to the can on the ground.

And at that time, as the defendant was moving, Officer Rubin observed what he believed was an extended magazine clip sticking out of Mr. Edney's pants pocket. He then instructed Mr. Edney, show me your hips, to which Mr. Edney complied. He again was asked if he had a gun and he said no, at which point the officer reached in and pulled out the magazine from the pocket and then held up a TASER to Mr. Edney and asked him do you have a permit. He also said no. But the magazine did not have a gun attached to it, it was just a magazine.

He at that point -- they detained the defendant, and they attempted to handcuff him and he went limp like a rag doll and they had to lower him to the ground and then they

probable cause.

In order to do an actual search, they have to have probable cause that there was a crime. They did not have that. All they had at that point was a person who maybe was engaging in reckless endangerment, but they didn't have any complainant to support that. They had maybe he had a gun on him, but all at that point they knew that he had a magazine which doesn't require a license. They knew that he didn't have a license and all of that is reasonable suspicion to frisk him, but that is not what they did.

And so the law is clear that without that -- if they had frisked him and felt the gun they would have been authorized at that point and went into pocket to retrieve it. But at the moment that they put their hand in the pocket, they didn't have probable cause to believe that he had a weapon on him, so they couldn't be engaging in a full-blown search at that point, and they couldn't have arrested him so you can't have a search incident to arrest, so the gun has to be suppressed. They just didn't meet the legal standards here. And I

ORLANDO EDNEY
11133 Templeton Drive
Philadelphia, PA. 19154

Retail

UNITED STATES POSTAL SERVICE

19106

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
PHILADELPHIA, PA 19145
SEP 19, 2026

$3.14

S2324M503215-32

Attn:
Clerk of Court
United States District Court
601 Market Street Room # 2609
Philadelphia, PA. 19106

RECEIVED
SEP 24 2026
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA